UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,**

    **Plaintiff,**

v.                                                 Case No: 5:21-cv-229-ACC-PRL

**QUALTOOL, INC.,**

    **Defendant.**

## ORDER

Before the Court in this employment discrimination case is the plaintiff's renewed motion to compel documents from Defendant and motion to compel Defendant's responses to its' third request for production. (Doc. 46). On November 15, 2022, this Court held a hearing. For the reasons stated below and discussed in the hearing, Plaintiff's motion is **granted in part** and **denied in part.**

    **I.**        **BACKGROUND**

Previously, the plaintiff (the EEOC), filed a motion to compel Defendant (Qualtool, Inc.), to (1) produce responsive documents in a native, usable format and organized in the manner requested by EEOC in the first request for production, (2) provide an affidavit listing ESI repositories such as email addresses, devices, and other online accounts, (3) cease unsupervised ESI self-collection and conduct supervised searches. (Doc. 18). This Court denied that motion without prejudice, as Qualtool "made a good faith effort to comply with all of EEOC's requests and has even offered to allow EEOC to search the computers and give

additional search terms. It appears that better communication between the parties could effectively resolve these discovery issues without judicial assistance." (Doc. 20).

Despite the parties conferring per the Court's May 23, 2022 order denying the motion to compel, two issues remained unresolved—(1) documents being produced in a disorganized manner without bates number references and (2) Qualtool running ESI searches. On the discovery deadline, October 3, 2022, the EEOC filed a renewed motion to compel for these two issues and to compel Qualtool's responses to its third request for production. (Doc. 46).

The EEOC's renewed motion seeks to (1) compel Qualtool to re-run computer searches with specific search terms, covering six e-mail accounts, and using agreed-upon software (Outlook and Windows File Explorer); and to (2) prevent Qualtool from objecting at trial, on the grounds of authentication, that documents in the "QUALTOOL REVISED" production are not the documents it originally produced. Also, the EEOC now moves to compel Qualtool's responses to its requests for information, specifically seeking personnel files, training progression forms, compensation of employees, financial information, and Outlook search history.

## II. STANDARDS

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 615CV1185ORL22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). "Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.' Fed. R. Evid. 401." *Hankinson v. R.T.G. Furniture Corp.*, No. 15-81139-civ-Cohn/Seltzer, 2016 WL 1182768, at *1 (S.D. Fla. Mar. 28, 2016) (quoting *Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143, at *2 (M.D. Fla. Mar. 8, 2016)).

Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554,

569 (D. Colo. 2014)).

When objecting to a discovery request, the "[p]arties are not permitted to assert . . . conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable." *Martin v. Zale Del., Inc.*, No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008). Indeed, an objecting party "must explain its reasoning in a specific and particularized way" and "an objection that a discovery request is irrelevant . . . must include a specific explanation describing why." *Id.* at *1–2. Finally, "[o]bjections based on privilege or work product protection must be made expressly." *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-CV-749-ORL-41, 2015 WL 1470971, at *4 (M.D. Fla. Mar. 31, 2015) ("A party cannot assert a privilege by saying that responsive documents might be privileged").

### III.     ISSUE #1—BATES NUMBER REFERENCES

First at issue is the EEOC's request for this Court to prohibit Qualtool from objecting at trial, on grounds of authentication, that documents from the "QUALTOOL REVISED" production are not those originally produced by Qualtool in this litigation. (Doc. 46 at 6-7).

Purportedly, in producing documents to the EEOC, Qualtool failed to label some, produced some multiple times, and placed them into file folders with unclear labeling. (Doc. 46 at 6-7). In the first motion to compel, the EEOC took issue with the lack of bates labeling, and the Court noted that "[i]n Qualtool's response, it states that it has willingly complied with all of EEOC's requests and has offered suggestions to issues that have been brought to counsel's attention." (Doc. 20 at 2).

Ordering the parties to confer, they did so in-person on June 23, 2022, and on June 28, counsel for the EEOC (Austin Case) emailed counsel for Qualtool (Robyn S. Hankins), memorializing their conferral. Relevantly, Mr. Case stated that: "Qualtool agreed to conduct

EEOC's proposed searches and produce native versions of all responsive discoverable documents, with metadata intact, to EEOC. EEOC will number the native documents and produce them back in native format with a load file to Qualtool." (Doc. 46-1). Ms. Hankins responded:

> Please let me know what other search terms you propose beyond those I provided to you a few months ago. I do not currently have time to do a point by point of your recollections below, or to regurgitate again the responses to the below that has previously been provided, but wanted to get you the emails from the pink sticky that you asked for and again reiterate that we will cooperate with any reasonable request that is made.

(Doc. 46-2).

On June 7, 2022, EEOC produced back to Qualtool every document it previously produced, but with the bates stamp references QUALTOOL REVISED0000001 - QUALTOOL REVISED0003427. Although the EEOC requested Qualtool to certify this production was the one that originated with Qualtool on July 13th, 24th, 26th, 28th and August 5th and 9th, Qualtool did not.

On August 13, 2022, the parties conferred again, and on August 16th, Mr. Case sent Ms. Hankins an email memorializing the conferral, that "reiterated [the EEOC's] [r]equest that Qualtool acknowledge the documents and ESI bates stamped and produced back to Qualtool were accurate copies of documents produced by Qualtool. Qualtool refused to do so stating it would be too time consuming to verify every document." (Doc. 46-3 at 3). Further, Mr. Case "reiterated [the EEOC's] [r]equest that Qualtool revive document production links. The parties reached impasse on this issue." *Id.* In response, Ms. Hankins stated: "although I do not understand why, you asked that I renew all of the document production links. You downloaded those so I don't understand the request. I previously

offered multiple times to make a copy to an external hard drive, but that overture was refused." (46-3 at 2). Finally, on September 26th and 28th, the parties conferred a final time by email, and Qualtool reiterated its opposition to confirming the origin of the documents in the Qualtool Revised production.

Here, it appears that the relief the EEOC is requesting is essentially an advisory opinion, as determining the propriety of authentication objections is unnecessary until (and if) Qualtool raises the objection at trial. Although counsel stated during the November 15th hearing that she was unable to revive the file sharing links, she offered the complete production on a flash or jump drive. Counsel for the EEOC agreed that it was an acceptable alternative for Qualtool's counsel to send it the complete production on a flash or jump drive.

Therefore, the EEOC's motion, to the extent it seeks to prevent Qualtool from objecting on grounds of authenticity, is **DENIED.** However, to the extent the parties agreed to a complete file production on a jump drive, the motion is **GRANTED,** and Qualtool's counsel shall provide the EEOC's counsel with a jump drive that has the complete file production **on or before November 30, 2022.**

### IV.    ISSUE #2—ESI SEARCHES

Next at issue are the EEOC's requests for Qualtool to: (1) run six search terms on (2) six email accounts and five computers (3) using Outlook and Windows File Explorer computer software. (Doc. 46 at 4-6). In denying the EEOC's first motion to compel, the Court noted that Qualtool "has offered to make additional searches with search terms identified by EEOC and has offered to have the computers searched by someone designated by EEOC." (Doc. 20 at 3).

After conferring on June 23rd, Mr. Case sent an email on June 28th to Ms. Hankins, memorializing that "Qualtool agreed to search the entirety of all ESI documents using those terms [provided by the EEOC]." (Doc. 46-2 at 2). Ms. Hankins responded with a list of ten email addresses that may be repositories for the searches and stated "please let me know what other search terms you propose beyond those I provided to you a few months ago." (Doc. 46-2 at 1). On July 6th, the EEOC sent Qualtool "an Excel sheet with search terms tailored to each of the requests in EEOC's first [r]equest for [p]roduction." (Doc. 46 at 2). After conferring about the search terms and protocols several times in July and August of 2022, on August 15th, Qualtool stated that it would only run search terms covering five of the EEOC's (first) requests for production and would only search two computers and two email addresses (ceo@qualtool.com and mike@qualtool.com). (Doc. 46-4). These searches failed to uncover any responsive documents, and the parties conferred on September 26th and 28th about their disputes regarding search terms, accounts and computers searched. Qualtool has not confirmed that it ran the searches using the computer software agreed-upon by the parties (Outlook and Windows File Explorer).

While the Sedona Principles caution that the parties must cooperate to craft search terms that will effectively capture all relevant information without being too burdensome, this cooperation must be in good faith, consistent with the local rules. *L-3 Communs. Corp. v. Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015) ("Crafting appropriate search terms requires 'careful thought, quality control, testing, and cooperation with opposing counsel'") (quoting *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009)). When a party has limited the search terms following conferral according to the opposing party's input, that has been found sufficient to compel the opposing party to

run the search. *Santos v. Aids Healthcare Found.*, No. 19-62336-CIV-DIMITROULEAS/S, 2020 U.S. Dist. LEXIS 260040, at *9 (S.D. Fla. July 24, 2020) ("this ESI search is reasonable, [as it] has been narrowed and altered according to [d]efendant's input and shall be conducted by [d]efendant.").

### A. Search Terms

The EEOC seeks to have Defendant run the following six search terms in relation to the following requests for production:

Request No. 1-28[1]:

    1. "CLOSE PROXIMITY"

    2. "IN SIGHT" AND (*FEMAL* OR *WOM*)

    3. "SAME SEX";

Request Nos. 1-31,[2] 34,[3] 37,[4] and 47[5]:

    4. *JACKSON* OR *PAM* OR *2093*;

Request No. 1-43[6]:

    5. (*DANGER* OR *SAFETY*) AND *NIGHT*;

---

[1] Request No. 1-28: "Documents related to Defendant's policy that "females are always assigned to work in close proximity and in sight of other females" identified in its October 28, 2018, [sic] position statement, including but not limited to documents that reflect this policy, any communications (including via email and text) pertaining to this policy." (Doc. 46-4 at 23).

[2] Request No. 1-31: "The complete personnel information (see Instruction C) of the following individuals: a. Pamela Jackson[,] b. Miranda Buss George[,] c. Lynn Frenz[.]" (Doc. 46-4 at 26).

[3] Request No. 1-34: "Documents sufficient to show the complete schedules of Pamela Jackson and Miranda Buss George (the days and hours worked) during their employment with Qualtool." (Doc. 46-4 at 28).

[4] Request No. 1-37: "Documents relating to Pamela Jackson's and Miranda Buss George's separation(s) from employment at Qualtool, including, but not limited to, any communications about their separation(s), termination(s) and/or refusal(s) to rehire." (Doc. 46-4 at 30).

[5] Request No. 1-47: "Documents and communications pertaining to Pamela Jackson's work performance." (Doc. 46-4 at 37).

[6] Request No. 1-43: "Documents related to the hazards or potential hazards present at the Jobsite while working on the second shift." (Doc. 46-4 at 34-35).

Request No. 1-46[7]:

6. *MILLER* OR *CHRIST*.

(Doc. 46 at 4). The EEOC contends the search terms for request 1-28 "are tailored to capture the discriminatory policy at issue, using the exact terms that are used in Qualtool's statement of position submitted to the EEOC during the administrative investigation." (Doc. 46 at 4). Further, it contends the search terms related to requests 1-31, 34, 37, 46, and 47 are the names of Ms. Jackson and Ms. Miller, which are central to the case, as both are women the EEOC claims were discriminated against. *Id.* Finally, search terms for request "1-43 are central to the case because they are tailored to capture one of Qualtool's defenses, which is that women could not work alone because of safety issues on the night shift." (Doc. 46 at 5).

B. Email Accounts

Second, as discussed in the hearing, the EEOC's counsel seeks to have Qualtool run the search terms on six email accounts and five computers relevant to the lawsuit. While Qualtool searched two e-mail accounts (ceo@qualtool.com and mike@qualtool.com), the EEOC identified four additional accounts relevant to this lawsuit: lynn@qualtool.com, sherry@qualtool.com, ginger@qualtool.com, and sales@qualtool.com. (Doc. 46 at 5). The EEOC claims the first three accounts (lynn@qualtool.com, sherry@qualtool.com, ginger@qualtool.com) are relevant because they belong to "company officers, . . . whom were deposed or listed in the parties' disclosures as having relevant information." *Id.* Likewise, the

---

[7] Request No. 1-46: "Communications (including text messages and/or emails) sent, received, or including any Qualtool employee or manager regarding Ms. Miller or her application for employment." (Doc. 46-4 at 37).

EEOC claims the fourth account, sales@qualtool.com, is relevant because the Vice President Mike Sloan, uses it as an email account (in addition to mike@qualtool.com). *Id.*

### C. Software Programs

Finally, when re-running the searches, as represented in the hearing, counsel for Qualtool will use the computer software of Outlook and Windows File Explorer. (Doc. 46 at 5). The EEOC designed the search terms to only be compatible with these computer software programs. (Doc. 46 at 5-6). Counsel for Qualtool represented that partial searches (without the six search terms) were properly conducted on the two email accounts and two computers previously searched, using the appropriate software.

For the reasons addressed here and discussed at the hearing, EEOC's motion is **GRANTED**, to the extent that the six search terms will be run on the six email accounts and five computers, using Outlook and Windows File Explorer, respectively.

### V.   ISSUE #3—THIRD REQUEST FOR PRODUCTION

Finally, the EEOC seeks to compel Qualtool's responses to its third request for production—an issue that is raised for the first time in this motion. Specifically, the responses the EEOC seeks to compel are to requests numbers 1, 2, 5, 25, 28, 31, 35, 36, and 37. The EEOC contends that Qualtool improperly objected to these requests by: (1) failing to identify and describe withheld documents, (2) failing to specifically articulate which portions of the requests are vague or irrelevant; and (3) failing to estimate the cost or number of responsive documents and the amount of labor required to produce them. (Doc. 46 at 7-8). However, some of these requests appear improper, and the EEOC should narrow their scope.

### A. Outlook Search History—Request No. 3-5

In request for production 3-5 the EEOC seeks from Qualtool the Outlook search history for the searches it conducted, to determine whether the searches were done using proper terms and syntax. (Doc. 46 at 17). Given that Qualtool's counsel represented in the hearing that the searches were properly conducted, the Court agrees that this request is unnecessarily burdensome without a specific allegation of misconduct. Therefore, the EEOC's motion, to the extent it seeks to compel Qualtool's production responsive to request 3-5, is **DENIED**.

### B. Personnel Files—Requests Nos. 3-1, 3-2, and 3-25

In requests for production numbers 3-1, 3-2, and 3-25, the EEOC seeks the personnel files of employees working for Qualtool. As discussed in the hearing, while some personnel files have already been produced, these requests appear temporally overbroad:

> Request No. 3-1: The complete personnel file, including but not limited to, documents reflecting pay rate, prior work experience, and date of hire, dates of employment, promotion, demotion, disciplinary records, resume, application, training, certifications, electronic and paper human resource records, background checks, and schedule, of any current or former shift leaders, team leaders, supervisor, or any person in equivalent position from 2010 to present.
>
> Response: Qualtool objects to this document request in that it seeks documents that are not relevant, the request is not proportional to the needs of the case and, thus, is outside the scope of permissible discovery, it is overly broad and unreasonable in that it seeks documents from more than twelve years ago, which is far outside of the applicable limitations period at issue in this matter (i.e., 300 days prior to Ms. Miller's filing of the charge of discrimination). Qualtool further objects that this request is vague in that it does not identify who it is seeking documents regarding, and it is nothing more than a fishing expedition about people who have no relationship to this matter. As the requested documents are not relevant, they will not be produced.
>
> Request No. 3-2: The complete personnel file, including but not limited to, documents reflecting pay rate, prior work experience, and date of hire, dates of employment, promotion, demotion, disciplinary records, resume, application, training, certifications, electronic and paper human resource records, background checks, and schedule, of any person who worked at least one second or third shift at Qualtool from 2010-to present.

<u>Response</u>: Qualtool objects to this document request in that it seeks documents that are not relevant, the request is not proportional to the needs of the case and, thus, is outside the scope of permissible discovery, it is overly broad and unreasonable in that it seeks documents from more than twelve years ago, which is far outside of the applicable limitations period at issue in this matter (i.e., 300 days prior to Ms. Miller's filing of the charge of discrimination). Qualtool further objects that this request is vague in that it does not identify who it is seeking documents regarding, is overly burdensome as it would require the review of twelve years of time cards (which do not exist) to identify who worked a shift here and there, and it is nothing more than a fishing expedition about people who have no relationship to this matter. As the requested documents are not relevant, they will not be produced.

<u>Request No. 3-25</u>[8]: The personnel file (see Instruction C) and employment information, including resume(s) and application materials,[9] for each person identified on Defendant's Rule 26(a)(1) Initial Disclosures [Defendant's witnesses], if not previously produced.

---

[8] The EEOC's motion also includes request for production number 3-26, which appears to be a duplication error of request 3-25. Therefore, that request is omitted from this order.

[9] Instruction C, at least from the first request for production:
> should be considered a request for those documents, commonly maintained in the ordinary course of business, that evidence the following information:
> a. contact information;
> b. application for employment and pre-hire information;
> c. qualifications for each job held or applied for;
> d. contract(s) of employment;
> e. duties and/or responsibilities, including the equipment they operated;
> f. work assignments;
> g. location and dates of work assignments;
> h. salary, commissions and/or income earned;
> i. identification of certain benefits that the employee has or will be entitled to;
> j. hours worked, shifts worked, and/or flex time worked;
> k. history of positions held, including promotions and/or demotions;
> l. history of disciplinary actions;
> m. performance evaluations or periodic performance reviews, whether formal or informal;
> n. communications that relate or refer to performance including, but not limited to, commendation and/or complaint;
> o. discipline, warnings and/or investigations about the employee's conduct;
> p. descriptions of all positions held within Defendants' business entities, or their affiliates, subsidiaries or successors;
> q. any training, completion of employment-related courses, attendance at seminars and/or conferences, and the dates thereof;
> r. professional associations, certifications, and specializations; and
> s. separation, reasons for separation and documentation relating to separation.

(Doc. 18-3 at 2-3).

> Response: This request is vague as it does not identify what persons it seeks documents regarding, particularly in light of the Court's ruling on Qualtool's motion to strike. Qualtool further objects that the definition "C" is overly broad, burdensome and outside the scope of discovery as the EEOC defines "personnel file" as requiring documents that are not maintained by Qualtool in the ordinary course of business. Finally, Qualtool objects that this request is beyond the permissible scope of discovery and seeks irrelevant information, including information that is personal third-party private and confidential information that has nothing to do with the pending claims and thus seeks irrelevant information.

(Doc. 46 at 9-10) (emphasis added).

The EEOC asserts the personnel files of Qualtool second-shift workers and supervisors are relevant as those are the same positions which Christina Miller applied for, and Pamela Jackson tried to work. (Doc. 46 at 10). The EEOC states this information "is relevant because it will reveal the pay, experience level, minimum qualifications, and training of actual people hired into the positions at issue." *Id.* Moreover, the EEOC believes that Qualtool is raising a defense that Ms. Miller lacked the experience requisite for the supervisor position, making this information relevant to the defense. *Id.* While it appears these requests are temporally overbroad, in that the alleged discrimination occurred in 2017, and the records sought are from 2010 to present, the EEOC contends that for Request 3-1, the temporal breadth is necessary because it estimates "fewer than seven supervisors" worked from 2010 to 2017. *Id.* at 10-11.

In regard to request 3-25, it seeks the personnel files of officers of Qualtool, as the EEOC contends these "are relevant to their handling of discrimination matters and their knowledge about the different job functions at Qualtool." (Doc. 46 at 11). In addition, this request seeks personnel files of people unidentified "by title in Defendant's disclosures, but who are believed to be machinists of varying experience." *Id.* at 12. The EEOC contends this

information "would reveal relevant information such as dates of employment, job titles, job qualifications and prior work history, and training progression. . . . [which] is relevant for a witness who plans to testify on Qualtool's training progression and about the job functions at Qualtool[.]" *Id.*

Notably, the EEOC identifies that "Qualtool has produced partial personnel files, lacking training or compensation information, that appear to be responsive to . . . request for information number 3-24, but are not files for the persons identified in [these] requests." (Doc. 46 at 11 n.2). Qualtool argues that multiple personnel files have already been produced, and the EEOC fails to identify any relevant documents not produced. (Doc. 48 at 9). Moreover, Qualtool argues that the requests are excessive in seeking records spanning twelve years and failing to specifically identify records for production. (Doc. 48 at 7-10).

Courts have consistently found that personnel files contain sensitive, confidential information and only require their production under appropriate circumstances. *See Sanchez v. Cardon Healthcare Network, LLC*, No. 3:12-cv-902-J-34JBT, 2013 WL 2352142, *2 (M.D. Fla. May 29, 2013); *Moss v. Geico Indem. Co.,* Case No. 5:10–cv–104–Oc–10TBS, 2012 WL 682450, at *5-6 (M.D. Fla. Mar. 2, 2012); *see also Regan–Touhy v. Walgreen Co.,* 526 F.3d 641, 648 (10th Cir. 2008) ("[P]ersonnel files often contain sensitive personal information ... it is not unreasonable to be cautious about ordering their entire contents disclosed willy nilly.").

As discussed in the hearing, the only additional corporate officer whose personnel file shall be produced is Virginia Hardin's, omitting medical records. Given that it appears only a limited number of personnel files are responsive to requests 3-1 and 3-2, it seems that this request will not be overly burdensome, particularly if temporally limited to the years 2012 to 2020 (five years before and three years after 2017, the year the alleged events giving rise to

this lawsuit occurred). For request 3-25, as discussed in the hearing, production shall be limited to personnel files of those witnesses who are machinists or laborers working the first or second shift.

Therefore, the EEOC's motion to compel documents responsive to requests 3-1, 3-2 and 3-25, is **GRANTED**, to the extent that requests 3-1 and 3-2 will be limited to the years 2012 to 2020, and request 3-25 will be limited to corporate officer Virginia Hardin's personnel file (without medical records) and the personnel files of witnesses who are machinists or laborers on the first or second shift.

### C. Training Progression Forms for Second Shift Employees—Request No. 3-28

In request for production 3-28, the EEOC seeks the training progression forms of second shift workers, "to determine the training progression and time necessary for training on particular machines." (Doc. 46 at 13). Specifically, the request seeks:

> Any documents reflecting the work experience or training of any person who worked any second shifts at Qualtool at any time from 2013 to present.
>
> Response: This request is vague as it does not identify what documents are being sought regarding which persons, over an extended time period, in a role that is entirely dependent on what work is needed on a particular day. Qualtool further objects that this request is overly broad and unduly burdensome in that it would require the identification of any person who ever worked a second shift over the past 9 years (which can only be determined by going through voluminous time cards, to the extent such time cards exist) and then search for training materials and documentation relating to such persons. Finally, Qualtool objects that this request is beyond the permissible scope of discovery and seeks irrelevant information, including information that is personal third-party private and confidential information that has nothing to do with the pending claims.

(Doc. 46 at 13) (emphasis added).

The EEOC contends these are "relevant because of Qualtool's defense that training had to take place on the day shift and that people underwent lengthy training." (Doc. 46 at 13). Moreover, the EEOC asserts that "the amount of responsive information is not

voluminous" since "Qualtool did not operate a second shift after 2020, and . . . already knows the identity of persons who worked the second shift from 2017 until 2020. . . [And] before 2017, the second shift was worked consistently by a small group of men." (Doc. 46 at 13).

Although Qualtool's counsel represented in the hearing that records for 2017 to present were provided, she stated that before 2017, there was poor time keeping and training progression form preservation. However, it appears that requiring Qualtool's counsel to produce these documents from 2013 to 2017, is not overly burdensome given that there are relatively few employees, and the request seems necessary to establish the nature of the workforce and employment policies.

Therefore, the EEOC's motion to compel, to the extent it seeks documents from 2013 to 2017 that are responsive to request for production 3-28, is **GRANTED**.

### D. Compensation of Comparators—Request No. 3-31

In request number 3-31, the EEOC seeks "[d]ocuments sufficient to show the total compensation of each employee in 2017, 2018, 2019, and 2020." (Doc. 46 at 14). Qualtool objected that

> [t]his request is overly broad and seeks documents that are irrelevant and outside the scope of permissible discovery in this case. By way of example, this request seeks the compensation of persons employed in positions not held or sought by either of the two "class" members who remain in this matter. Finally, Qualtool objects that this request is beyond the permissible scope of discovery and seeks irrelevant information, including information that is personal third-party private and confidential information that has nothing to do with the pending claims.

(Doc. 46 at 14). While the EEOC acknowledges that after issuing this request, the Court limited the scope of the class, it contends the information remains relevant to the issue of damages, in how much Ms. Miller or Ms. Jackson would have earned if they were unexcluded

from the second shift as laborers or supervisors. Hence, it appears that the request should be limited to supervisors and employees working the second shift.

Therefore, the EEOC's motion to compel is **GRANTED**, to the extent that Qualtool shall produce documents responsive to request 3-31 only for second-shift laborers and supervisors.

### E.  Qualtool Financial Information—Request Nos. 3-35, 3-36, and 3-37

Finally, the EEOC seeks documents related to Qualtool's finances, because "recent history of financial profitability is relevant to the issue of punitive damages." (Doc. 46 at 15). The EEOC has requested punitive damages in its complaint (Doc. 1 at 8). Although Qualtool has allegedly produced a summary balance sheet, it is purportedly insufficient to evaluate Qualtool's net worth or determine if it would be exempt from punitive damages based on its financial condition. (Doc. 46 at 15). Further, the EEOC seeks documents related to a loan made by Joan Standlee (CEO of Qualtool) to Qualtool, that purportedly affects its financial profitability because Ms. Standlee draws a salary from the loan. *Id.* at 15-16. Specifically, in these requests, the EEOC seeks:

> Request No. 3-35: Datapro documents, data, reports, .xls exports, and other information showing the profits of the company on an annual monthly, quarterly or other periodic basis.
>
> Response: Qualtool objects to this request in that it seeks to have Qualtool create documents that are not currently in existence, is not proportional to the needs of the case, and seeks information that is neither relevant nor within the appropriate scope of discovery as set forth in both the Middle District's Rules regarding the production of ESI information and the Sedona Principles, Third Edition. Qualtool further objects that the continued request for ESI in this matter is a fishing expedition, and is intended to harass and increase the costs incurred in this matter. Qualtool has provided all ESI relevant to this matter.
>
> Request No. 3-36: Loans and communications about loan terms or payments between Joan Standlee and Qualtool.

> Response: Qualtool objects to this request in that it is outside the permissible scope of discovery, is a fishing expedition, and seeks documents that are irrelevant is not proportional to the needs of the case. Further, this request seeks personal information that is confidential and not subject to discovery in this matter.
>
> Request No. 3-37: Joan Standlee's state and federal tax returns showing income derived or expenses or losses attributed to from Qualtool Inc. during the past 5 years.
>
> Response: Qualtool objects to this request in that it is outside the permissible scope of discovery, is a fishing expedition, and seeks documents that are irrelevant is not proportional to the needs of the case. Further, this request seeks personal information that is confidential and not subject to discovery in this matter. Qualtool does not maintain Ms. Standlee's personal tax returns as part of its business documents.

(Doc. 46 at 14-15).

While financial information is relevant to a claim for punitive damages, such information should be limited to current financial information and should be protected by a confidentiality agreement. *See, e.g.*, *Lane v. Cap. Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005). An ordinary showing of relevance is sufficient to compel production of tax records in sex discrimination cases. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) (holding in age discrimination case that district court did not abuse discretion in compelling production of tax records that were relevant to the case); *Barbine v. Keystone Quality Transp.*, No. Civ.A.03-3426, 2004 WL 1472791, *3 (E.D. Pa. June 7, 2004) (compelling production of tax records in sex discrimination case given relevance to determination of defendant's assets and plaintiff's claim for punitive damages); *Cooper v. Garden of Life, Inc.*, No. 06-80809-CIV, 2007 WL 9701859 (S.D. Fla. July 6, 2007) (in employment discrimination case compelling tax records relevant to plaintiff's claim for back pay in showing income and financial status of her company that would mitigate back pay).

For request 3-35, counsel for Qualtool represented that it had already produced all documents it had, however, it appears that some documents may have been excluded. Regardless, it appears that request 3-35 is temporally overbroad, and should be limited to recent years, given that punitive damages' concern a company's present financial condition. *Lane*, 242 F.R.D. at 670 ("Only current financial documents are relevant to a claim for punitive damages.") (citations omitted). Therefore, the EEOC's motion to compel documents responsive to request 3-35 is **GRANTED**, to the extent that Qualtool shall only produce documents from 2017 to present.

Further, for request 3-36, counsel for Qualtool represented in the hearing that it has produced all relevant loan documents. If more documents responsive to this request are identified, counsel shall produce them, but it appears this request is moot. Therefore, the EEOC's motion to compel documents responsive to request 3-36 is **DENIED** as moot.

Finally, as to request 3-37 counsel represented that it no longer seeks to compel this information, as the deposition of the corporate representative would be sufficient to provide binding testimony as to information this request seeks. Therefore, the motion to compel documents responsive to request 3-37 is **DENIED** as moot.

### VI. CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's motion is **GRANTED** in part and **DENIED** in part, as follows:

1) Defendant is **directed** to provide Plaintiff's counsel with a jump drive that has the complete file production **on or before November 30, 2022.**

2) Defendant is **directed** to run the six search terms on the five computers and six email addresses using computer software programs Outlook and Windows File Explorer.

3) Defendant is **directed** to respond to requests 3-1 and 3-2 for the years 2012 to 2020.

4) Defendant is **directed** to respond to request 3-25 as to Virginia Hardin (omitting medical records).

5) Defendant is **directed** to respond to request 3-28 for the years 2013 to 2017.

6) Defendant is **directed** to respond to request 3-35 for the years 2017 to present.

**DONE** and **ORDERED** in Ocala, Florida on November 16, 2022.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties